C. J. WEISER, R. A. Engbertson, and L. B. Whitney, Respondents, v. J. C. RIDGEWAY, Appellant.

and

WAR FINANCE CORPORATION, a Corporation, Intervener and Appellant.

(215 N. W. 870.)

**Parties — trustee may maintain action to enforce chattel mortgage he holds as trustee.**

1. A trustee of an express trust may maintain an action in his own name to enforce a chattel-mortgage which he holds as such trustee.

**Parties — filing answer in intervention after trial has begun — no abuse of discretion.**

2. In the instant case, the plaintiffs after the commencement of the trial asked leave to interpose an answer to a complaint in intervention. For reasons stated in the opinion it is held that the trial court did not err in granting such leave.

**Chattel mortgages — evidence supports finding that chattel mortgages had not been released or waived.**

3. The principal question at issue in the instant case is whether two certain chattel mortgages held by the plaintiffs were discharged or waived so as to render a subsequent chattel mortgage, held by the intervener, War Finance Corporation, a first lien upon certain chattel property covered by all three mortgages. The evidence is examined and for reasons stated in the opinion it is held that the trial court was correct in ruling that plaintiffs' chattel mortgages had not been released or waived and that they constituted first liens upon the chattel property in question.

---

Annotation.—(1) Agent or trustee of express trust within exception in statute requiring suits to be brought in the name of the real party in interest, see annotation in 41 L.R.A.(N.S.) 641; 20 R. C. L. 667.

**Pleading — application for leave to interpose supplemental answer and a supplemental complaint addressed to sound discretion of court.**

4. An application made after the conclusion of the trial for leave to interpose a supplemental answer and a supplemental complaint in intervention is addressed to the sound, judicial discretion of the trial court and its ruling will not be disturbed unless so clearly wrong as to amount to an abuse of discretion. In the instant case it is held that the trial court did not abuse its discretion in denying such application.

Opinion filed November 4, 1927.

Bills and Notes, 8 C. J. § 1102 p. 843 n. 5.   Chattel Mortgages, 11 C. J. § 412 p. 661 n. 15; p. 662 n. 17.   Pleading, 31 Cyc. p. 504 n. 68; p. 521 n. 36.

From a judgment of the District Court of Golden Valley County, *Pugh,* J., J. C. Ridgeway, defendant, and the War Finance Corporation, intervener, appeal.

Affirmed.

*Hildebrand & Warren* and *Keohane & Oppegard,* for appellants.

The taking of a new note and the surrendering up of the original note to the maker operates as an extinguishment and satisfaction of the original debt.   Citizens Commercial & Sav. Bank v. Platt, 97 N. W. 694.

A person dealing with a corporation in the usual manner and within the powers which the president has been accustomed to exercise without dissent of the directors is entitled to assume that the president has actually been invested with those powers, and under such circumstances, the contract of the president is presumed to be authorized until the contrary is shown.   7 R. C. L. 451; Lloyd & Co. v. Matthews, 223 Ill. 477, 79 N. E. 172, 7 L.R.A.(N.S.) 376, note.

Where a bank has received the benefit of a loan obtained for it by its president or representative on his personal responsibility, it is estopped to deny the president's or representative's authority in negotiating such loan.   Tourtelot v. Whithed, 9 N. D. 407, 84 N. W. 8; Farmers Bank v. Couture, 45 N. D. 401, 178 N. W. 138.

*Theo. B. Torkelson,* for respondents.

No motion for a new trial having been made, the appellate court cannot review the sufficiency of the evidence to sustain the findings of the

court. Horton v. Wright, 43 N. D. 114, 174 N. W. 67; Lofthouse v. Galesburg State Bank, 48 N. D. 1019, 188 N. W. 585.

"The acceptance by a creditor of a promissory note of his debtor, for his antecedent debt, does not extinguish it, unless the note is paid. It is a conditional not an absolute payment." Leschen & Sons Rope Co. v. Mayflower Gold & Reduction Co. 97 C. C. A. 465, 175 Fed. 855, 35 L.R.A.(N.S.) 1.

The taking of a second mortgage to secure the same debt accrued by first mortgage and upon the same property does not operate as a satisfaction and a release in law of the first mortgage. Howard v. First Nat. Bank, 44 Kan. 549, 24 Pac. 985, 10 L.R.A. 537.

"The cashier of a bank cannot pay his own indebtedness to it by accepting a purchase money mortgage, upon sale of his own property, in the name of the bank, so as to vest the title to the note and mortgage in the bank." First Nat. Bank v. Gunhus (Iowa) 110 N. W. 611, 9 L.R.A.(N.S.) 471.

The power of an officer or agent of a corporation to bind the corporation is governed by the general law of agency; the underlying principles are the same. 7 R. C. L. 456, § 441.

The mortgage does not cease to be valid through failure to refile, as against the mortgagor, nor in favor of any one except subsequent purchasers and encumbrancers in good faith who became such after the expiration of the statutory period for renewing. William Deering & Co. v. Hanson, 7 N. D. 288; Aultman Engine & Thresher Co. v. Young (S. D.) 126 N. W. 245.

CHRISTIANSON, J. The ultimate question involved in this case is whether a certain chattel mortgage held by the appellant War Finance Corporation, is prior to other chattel mortgages on the same property held by the plaintiffs. The facts necessary to an understanding of the controversy are substantially these: In May 1919, one Clement L. Waldron, was and for a number of years prior thereto had been a resident of Beach, North Dakota. He owned a ranch in Fallon county, Montana, some twenty-six miles southwest of Beach. In order to finance the operation of the ranch Waldron had, from time to time, borrowed money from the First National Bank of Beach so that on

May 26, 1919 he was indebted to that institution in the sum of some $6,000, which was the maximum amount the First National Bank of Beach could loan to any one individual. This indebtedness was not secured in any manner. A majority of the capital stock of the First National Bank of Beach was owned by persons who were stockholders in and officers of the Citizen's Savings Bank of Decorah, Iowa. One Curtin was president of the Citizen's Savings Bank of Decorah and also vice president of the First National Bank of Beach. One Attletweed was president of the First National Bank of Beach. On May 26, 1919, Waldron found it necessary to borrow some more money and Curtin, who was then at Beach, agreed to make Waldron a loan of $4,000. The loan was made and Waldron executed his note to Curtin in the sum of $4,000, and also executed and delivered to him a chattel mortgage upon certain cattle and horses belonging to him and kept upon his ranch in Fallon county, Montana. The mortgage was duly recorded in the office of the county recorder of Fallon county, Montana. Curtin thereafter transferred the note by endorsement and the mortgage by written assignment to the Citizen's Savings Bank of Decorah, Iowa, and they were placed in and became part of the assets of that bank. From Curtin's testimony it is apparent that it was his intention at the time the loan was made to make the loan for the Decorah Bank or at least out of the Bank's funds. He testified, that he had the papers executed in his own name as a matter of convenience and to avoid the difficulty then existing both on account of the laws of North Dakota relating to foreign corporations and the regulations of the Iowa Banking Department. According to the testimony of Waldron, however, he (Waldron) supposed that the loan was in fact made by Curtin and Waldron did not know that the Citizen's Savings Bank of Decorah, Iowa had or would have anything to do with the transaction. It is undisputed that the Decorah Bank paid, and that Waldron received the full amount of the notes. The $4,000 note was not paid at maturity but it became necessary for Waldron to have more money and on February 1, 1921, Waldron executed four promissory notes, aggregating in all $6,790, the consideration being the renewal of the former $4,000 note and interest, and additional cash furnished him by the Decorah Bank. These notes were also executed to Curtin. At the

time of their execution and delivery Waldron executed and delivered another chattel mortgage covering the same property as that covered by the first mortgage and the latter chattel mortgage was also duly recorded. These notes were, also, endorsed by Curtin and the chattel mortgage assigned to the Decorah Bank. Owing to then existing financial conditions the First National Bank of Beach found it necessary to rediscount the notes which it held against Waldron with either the Federal Reserve Bank or the War Finance Corporation and, in order to make Waldron's notes available for this purpose, Waldron on October 21, 1921, executed and delivered to the First National Bank of Beach a note in the sum of $6,000, and a chattel mortgage to secure the payment of the same upon the horses and cattle covered by the former mortgages taken by Curtin and by him assigned to the Citizen's Savings Bank of Decorah. There is a square conflict in the testimony as to what occurred at the time the mortgage to the First National Bank of Beach was taken. Attletweed, the President of the First National Bank of Beach, North Dakota, testified that Curtin agreed that the mortgages then held by the Citizen's Savings Bank of Decorah, Iowa, would be released to the end that the chattel mortgage given by Waldron to the First National Bank of Beach might become a first lien upon the property. Curtin denied that he agreed to release the mortgages held by the Decorah Bank and testified that it was understood that the mortgages held by the two banks were to stand together and be of "equal priority." The First National Bank of Beach discounted the $6,000 note with the War Finance Corporation, and two successive renewals thereof were likewise discounted with the same institution. The notes held by the Citizen's Savings Bank of Decorah, Iowa, were again renewed in October, 1922, and Waldron testified that at this time the notes given by him to Curtin on February 1, 1921 were delivered to him by one Amundson, cashier of the Citizen's Savings Bank of Decorah. The notes held by the Citizen's Savings Bank of Decorah were again renewed November 5, 1923. Chattel mortgages were executed by Waldron both in October, 1922 and on November 5, 1923, to secure the notes given on these dates, and such mortgages were duly recorded in the office of the county recorder of Fallon county, Montana. The notes executed in October, 1922 and those executed

November 5, 1923 were made payable to Curtin and by him transferred to the Citizen's Savings Bank of Decorah, Iowa. During the early months of 1924 both the Citizen's Savings Bank of Decorah, Iowa and the First National Bank of Beach, North Dakota, closed. The defendant Ridgeway was appointed receiver of the First National Bank of Beach. As regards the Citizen's Savings Bank of Decorah, Iowa, an arrangement was made whereby three other banks in Decorah, Iowa, assumed liability to depositors of the latter bank. Under the arrangement thus made certain assets of the Decorah Bank were assigned to the three plaintiffs as trustees. Among the assets so assigned were the notes of Waldron.

In the fall of 1924 an arrangement was made whereby Ridgeway, the receiver in charge of the Beach bank, was authorized to sell all the personal property covered by the respective mortgages and deliver the proceeds of the sale to the party or parties "adjudged entitled thereto." Ridgeway conducted such sale and received as the proceeds thereof the sum of $2,173.36 and this action was brought by the plaintiffs to recover such moneys. Ridgeway filed an answer setting forth the agreement under which he conducted the sale and alleged that he held the moneys under such agreement, and was willing to pay the moneys to whomsoever the court found to be entitled thereto, and he tendered such moneys into court. The War Finance Corporation asked leave to be joined as a party to the action and filed a pleading denominated a complaint in intervention setting forth its claims to the moneys held by Ridgeway. In this pleading the War Finance Corporation alleged the facts as regards the execution and delivery by Waldron to the First National Bank of Beach of the original note and chattel mortgage for $6,000, and the endorsement thereof to the War Finance Corporation for value and the subsequent renewals of such note and chattel mortgage, and asserted that the War Finance Corporation by virtue thereof, had a first lien upon all the personal property of Waldron described in such mortgage and that the moneys in the hands of Ridgeway, realized from the sale of such property, belonged to it. In its pleading the War Finance Corporation further alleged that the plaintiffs had converted twenty head of horses and one carload of cattle of the personal property covered by the chattel mortgage held by the War Finance

Corporation and it demanded damages for the value of such property. The case came on for trial before the court without a jury upon these pleadings. At the commencement of the trial, counsel for the respective parties proceeded to stipulate as regards the matters to be considered in the litigation.

Thereupon the following proceedings were had:

Plaintiff's attorney: "I presume you are willing to stipulate that all new matter alleged in your answer is to be deemed denied by the pleadings, are you not?"

One of defendant's attorneys: "Didn't you deny the complaint in intervention?"

Plaintiff's attorney: "No, I don't think I served a reply. I considered it an answer."

Defendant's attorney: "We will consider that the same as being denied, a general denial is there. As to the form of pleading, I am satisfied that complaint in intervention is the proper form."

Plaintiff's attorney thereupon proceeded to dictate into the record a statement, taking the complaint in intervention paragraph by paragraph and stating whether it was admitted or denied by the plaintiffs. At the conclusion of such statement plaintiff's counsel stated: "We would like to have it understood that we may serve and file a written reply to this complaint in intervention."

Defendant's counsel: "It isn't stipulated that you have that right."

The Court: "Yes, they may file and serve a pleading to this complaint in intervention. Of course, if you gentlemen want more time the court would have to grant it."

Defendant's counsel: "Of course, we want the record to show that we object to the filing of a pleading at this time."

The Court: "Yes, well, the statement of the court is that in the event that you are taken by surprise or unable to meet the issues as framed by this pleading that the court is willing to grant further time."

Plaintiff's counsel: "Unless counsel are willing to go ahead and try the case on the merits on the pleadings as they will be framed we don't want to go ahead and try it at this time."

The Court then suggested and declared a recess until the afternoon. At the time appointed for reconvening court the parties appeared and

the trial proceeded without any further objections of any kind. After the trial had been completed and the court had notified counsel for the respective parties that he had decided that plaintiff's mortgages were a prior lien upon the chattel property and that plaintiffs were entitled to recover all the moneys held by Ridgeway, counsel for Ridgeway and the War Finance Corporation served written notice of motion for leave to file, respectively, an amended answer for Ridgeway and a supplemental complaint in intervention for the War Finance Corporation, setting forth that the notes held by the plaintiffs were void and unenforceable because the Citizen's Savings Bank of Decorah in acquiring such notes had been doing business in North Dakota, in violation of laws of this state relating to foreign corporations (Comp. Laws 1913, §§ 5238–5242). The court denied such motion and thereafter made and filed findings of fact and conclusions of law in favor of the plaintiffs. Judgment was entered accordingly, and the defendant Ridgeway and the intervenor, War Finance Corporation, have appealed from the judgment.

It is first contended by the appellants that the plaintiffs have no right to maintain this action. In support of this contention attention is called to certain laws of the State of Iowa relating to the liquidation of insolvent banking corporations and it is asserted that so far as the record shows the Citizen's Savings Bank of Decorah, Iowa, was not liquidated in this manner, and the plaintiffs were not named as receivers conformably to the laws of Iowa relating to the appointment of receivers for an insolvent banking corporation. It may be remarked in passing that no proof was adduced at the trial of the laws of Iowa and under our laws it is, of course, incumbent upon a party seeking to invoke such laws to prove them. Comp. Laws 1913, § 7910; Re Peterson, 22 N. D. 480, 134 N. W. 751. But in any event the laws of Iowa invoked by the appellants, even though proven, would have been of no controlling effect in this case, for the plaintiffs here do not claim title through judicial or administrative proceedings had for the liquidation of an insolvent bank; they claim title by virtue of the endorsement of the notes, and the assignment of the chattel mortgages by the Citizen's Savings Bank to them as trustees for certain depositors and other creditors of the Citizen's Savings Bank of Decorah, Iowa. While there is testimony on the part of witnesses to the effect that the Citizen's Savings Bank

of Decorah, Iowa, closed its doors, there is no evidence that any proceedings were taken or had under the laws of Iowa looking toward the liquidation of that bank through judicial or administrative proceedings as an insolvent corporation. There is, however, undisputed evidence showing that the Citizen's Savings Bank of Decorah and the depositors in that bank and three other banks in Decorah, Iowa, entered into a written agreement, approved by the Iowa Banking Department, whereby certain of the assets of the Citizen's Savings Bank of Decorah were transferred to the other three banks and they in turn assumed certain liabilities to the depositors of the Citizen's Savings Bank of Decorah, Iowa; and that as a part of the same transaction the Citizen's Savings Bank of Decorah, transferred some of its assets including the Waldron notes to the three above named plaintiffs as trustees, for the benefit of the depositors of the Citizen's Savings Bank of Decorah and the three banks who had assumed the liability which the Citizen's Savings Bank of Decorah owed to its depositors. Under the terms of the written agreement the three plaintiffs were vested with full legal title to all the notes and securities transferred to them in trust. That the plaintiffs as trustees of an express trust have the right to maintain an action, in their own names, to enforce the notes is the settled law in this state. Comp. Laws 1913, § 7397; Braithwaite v. Aikin, 1 N. D. 455, 48 N. W. 354. See also 8 C. J. p. 843; 5 Uniform Laws Anno. p. 204.

It is next contended that the court erred in permitting the plaintiffs to interpose an answer to the complaint in intervention after the commencement of the trial. This contention is, we think, sufficiently answered by the record of the proceedings had at the time plaintiffs' application for leave to interpose such answer was granted. It is elementary that applications of this kind are addressed to the sound, judicial discretion of the trial court, and that its ruling thereon will not be disturbed by an appellate court, unless so clearly wrong as to evidence an abuse of discretion. Upon the record in this case it is too clear for controversy that there was no abuse of judicial discretion.

The trial court found:

"That there was never any written release nor satisfaction of any of the said mortgages made by said Waldron to said Curtin, and now owned by the plaintiffs, made or executed, either by said Citizen's Savings Bank of Decorah, Iowa, or by the plaintiffs, or by its or their

authority, nor was there ever any understanding or agreement on the part of the said Citizen's Savings Bank of Decorah or by the plaintiffs herein, or by its or their knowledge, authority or consent, for the release or waiver of the lien thereof, in whole or in part."

It is contended by the appellants that this finding is contrary to the evidence, and that the trial court should have found that there was an agreement on the part of the Citizen's Savings Bank of Decorah, Iowa, to release its chattel mortgages, and permit the mortgage taken by the First National Bank of Beach to become a first lien upon Waldron's chattels.

After careful consideration of all the evidence we have reached the conclusion that the findings of the trial court are correct. The evidence construed in the light most favorable to the appellants does not show any release of the chattel mortgages held by the plaintiffs. It shows merely an agreement on the part of Curtin to release such mortgages. The only evidence purporting to give the terms of the agreement was that of Attletweed and Curtin—both interested in the Beach Bank. It is quite apparent that whatever agreement was made or attempted to be made was in the interests of the First National Bank of Beach and the officers and stockholders of that Bank. The fact that some of the officers and directors of the First National Bank of Beach also were stockholders in the Citizen's Savings Bank of Decorah certainly did not establish any such relation between the two banks as to create an identity of interest as regards the securities of the two banks. The banks did not exist for the stockholders alone. The depositors have a vital interest in a banking institution, and there is no contention that the depositors in the two institutions were the same. Nor is there any contention that all of the stockholders in the Beach Bank were stockholders in the Decorah Bank or vice versa. The sole purpose of the alleged agreement on the part of Curtin to release the mortgages of the Decorah Bank was to enable the Beach Bank to discount the Waldron paper with the War Finance Corporation and receive some needed cash. It is undisputed, however, that no releases were executed and that so far as the records of the county recorder of Fallon county, Montana, are concerned, the mortgages held by the Decorah Bank at all times remained outstanding and existing liens upon the property in question, prior to the mortgages held by the War Finance Corporation.

We find it unnecessary to determine whether Curtin could bind the Decorah Bank by a release of its mortgages executed by him, for it is undisputed that he executed no releases and we are constrained to the view that the trial court was correct in holding that no agreement was made that the mortgages would be released. If there had in fact been an agreement to release these mortgages it is rather strange that written releases were not executed forthwith. It would have taken very little time to prepare and execute such instruments and the record contains no explanation at all satisfactory showing why this was not done. It is quite apparent from the evidence that an urgent need existed that the transaction be completed as speedily as possible so as to enable the Beach Bank to receive needed funds from the War Finance Corporation. It is likewise apparent that it was necessary to make some showing to the War Finance Corporation that the Beach Bank had a first mortgage on Waldron's chattels. The Decorah Bank, however, held first mortgages against these chattels, and the records in the office of the county recorder of Fallon county, Montana, showed these existing liens. No releases of these mortgages were taken nor was there any statement from anybody purporting to represent the Decorah Bank or Curtin, the mortgagee named in such mortgages, to the effect that these mortgages were to be released or the lien thereof waived, either in whole or in part in favor of the mortgage taken by the Beach Bank. There was, however, other showing submitted by way of an attorney's certificate to the effect that the mortgage held by the Beach Bank was a first lien upon the property. When the evidence is considered as a whole, we are of the opinion that there was in fact no agreement between Curtin and Attletweed to the effect that the Decorah Bank should or would release its mortgages or waive its liens. The liens were never discharged and if the War Finance Corporation had made an inquiry from the county recorder of Fallon county, Montana, or obtained an abstract of Waldron's chattels, it would have been informed of the outstanding prior mortgages upon the chattels. It is contended by the appellants, however, that Waldron's testimony to the effect that Amundson, the cashier of the Decorah Bank at the time the renewal notes and mortgages were taken in October, 1922 returned to Waldron the notes executed in February, 1921, is persuasive evidence of an intention on the part of the Decorah Bank to release the mortgage securing

such notes and that the return of such notes is itself sufficient to warrant an inference that these notes were paid and the mortgage taken to secure them was released. There is some conflict in the evidence as to whether the notes in question were returned to Waldron, but we find it unnecessary to determine whether the notes were or were not returned to him, for we are wholly satisfied that in the circumstances of this case no inference such as contended for by the appellants can be drawn even though the notes in question were turned over to Waldron. The presumption is that the renewal notes were taken as a continuation of the debt and not as a payment thereof and that there was no intention on the part of the holder of the indebtedness to release the mortgages securing the payment of the debt. C. A. Finch Lumber Co. v. Weishaar, 55 N. D. 695, 215 N. W. 155; 21 R. C. L. 74, 75. And the evidence in this case, we think, tends to corroborate rather than to contradict such presumption.

Did the trial court err in denying the application of the defendant, Ridgeway, and the intervenor, War Finance Corporation, for leave to serve and file supplementary pleadings after the conclusion of the trial? We think not. The sole object sought to be accomplished by the proposed supplementary pleadings was to assert as a defense in this action that the notes and chattel mortgages held by the plaintiffs were unenforceable because the Decorah Bank had acquired them, while engaged in business in this state, and without complying with the laws of this state relating to foreign corporations. Whether the evidence in this case establishes a situation where this defense is at all available, we do not decide. Appellants' claim that this defense is available rests primarily, if not wholly, upon the testimony of Curtin. But Curtin's testimony was taken by deposition almost fifteen months before the action was tried. Hence, this is not a case where upon the trial a party learns something which is vital in the action. Appellants had ample time, after Curtin's deposition was taken, and before the trial, to interpose the defense which they seek to present, by supplementary pleadings, after the trial.

Certain contentions are also advanced by the appellants to the effect that the plaintiffs or the Decorah Bank converted some of the property covered by the mortgages. It is a sufficient answer to this contention to

say that the evidence does not establish any conversion either by the Decorah Bank or by the plaintiffs.

There is also some contention suggested rather than argued that the original mortgage taken to Curtin and assigned to the Decorah Bank is barred by the statute of limitations. A sufficient answer to this contention is that the laws of Montana were not proven and under the laws of this state the lien of such mortgage would not be barred as against the mortgage held by the appellants. It follows from what has been said that the judgment appealed from should be affirmed. It is so ordered.

BIRDZELL, Ch. J., and BURKE, BURR, and NUESSLE, JJ., concur.