[File No. 6103.]

MILNOR HOLDING COMPANY, a Corporation, Appellant, v. H. P. HOLT et al.

WM. BUSCHING, E. J. Hatle and H. A. Rothhouse, Respondents.

(248 N. W. 315.)

Opinion filed April 29, 1933.

*Kvello & Adams*, for appellant.

*Charles G. Bangerl,* for respondents.

NUESSLE, Ch. J. This action was brought to recover on a written contract of guaranty. The plaintiff, in its complaint, after a recital of the formal allegations, alleges that on August 11, 1925, the Milnor Co-operative Mercantile Company made, executed, and delivered its note to the Milnor National Bank or order, whereby it promised to pay the sum of $1,279, and interest, on October 1, 1925; that the defendants for a valuable consideration guaranteed the payment of said note; that the plaintiff is the owner and holder thereof; and prays a recovery from the defendants as guarantors of the amount alleged as remaining unpaid thereon. The defendants, answering, pleaded numerous defenses. Among others, that there was no consideration for said guaranty; that the said note had been paid and discharged; that the guarantors had been exonerated by reason of taking the numerous re-

newal notes without the knowledge or consent of the defendants' guarantors. The case was tried to the court without a jury. The court made its findings of fact and conclusions of law in favor of the defendants Wm. Bushing, E. J. Hatle and H. A. Rothhouse, the defendant Holt not having been served, and ordered judgment accordingly. From the judgment entered thereon the plaintiff appeals.

The record discloses the following facts. The Milnor National Bank was a banking corporation doing business at Milnor, North Dakota. The Milnor Co-operative Mercantile Company was a local corporation organized to carry on a merchandise business at Milnor. When this corporation was organized in 1919, the Milnor National Bank and another bank at Milnor, each advanced the mercantile company $12,000. These advances were evidenced by promissory notes. There is testimony to the effect that the banks took the stock subscription notes for such advances. In any event, these stock subscription notes were turned over to the banks. Later, these stock notes not having been paid when due, the defendants also guaranteed the note given to the Milnor National Bank. Defendant Hatle's testimony is that the bank took the stock notes for the money advanced without any guaranty. Afterwards when the notes were not promptly paid the bank asked for and obtained the guaranty with the understanding that the stock notes should pay the obligation when times got better. As payments were made at intervals they were credited, until on August 11, 1925, there remained unpaid $1,279. On that date a new note, known in the record as Exhibit A, was executed and delivered to the bank for the amount of the indebtedness remaining unpaid as follows, to wit:

"Milnor, N. D., August 11, 1925. No. 6432.

"October 1, 1925, after date, for value received, I promise to pay to Milnor National Bank, or order, Twelve Hundred Seventy-Nine and No/100ths Dollars, $1,279.00 at its office in Milnor, North Dakota, with interest, payable annually, before and after maturity, at the rate of 9 per cent per annum, until fully paid. The drawers, endorsers, sureties and guarantors severally guarantee the payment of this note, waive presentment for payment, protest and notice of protest, notice of non-payment and diligence in enforcing payment of this note, and agree

that time of payment may be extended without notice to them, or without their consent, and without affecting their liability.

> "Milnor Co-Operative Merc. Co.,
> "H. P. Holt, Pres.
> "H. A. Rothhouse, Sec."

On the back of this instrument the defendants indorsed the following guaranty:

"For value received we hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest at the rate of 9 per cent per annum until paid, waiving demand, notice of nonpayment and protest.

> "H. P. Holt
> "Wm. Busching
> "E. J. Hatle
> "H. A. Rothhouse."

These are the note and the guaranty on which the plaintiff seeks to recover in the instant action.

Exhibit A bears an indorsement of $25 as of October 3, 1925. On October 31, 1925, the mercantile company executed and delivered to the bank a new note for $1,254, with interest at 9 per cent, payable on January 5, 1926. This note is identified in the record as Exhibit 5 and bears an indorsement of $25 as of date January 4, 1926. On March 10, 1926, the mercantile company executed another note for $1,229, payable May 10, 1926, identified in the record as Exhibit 4, with interest at 9 per cent. This note bears an indorsement of $25 as of June 17, 1926. On July 12, 1926, the mercantile company executed and delivered a further note for $1,200, payable September 15, 1926, with interest at 9 per cent. This note is identified in the record as Exhibit 3. It was guaranteed by the defendant H. A. Rothhouse. On January 15, 1927, the mercantile company executed a further note for $1,100, due April 1, 1927, with interest at 9 per cent. This note is identified in the record as Exhibit 2. It bears the following indorsements:

"Interest Pd.     .23c
"Pd. on prin. 19.00
"Pd. 10/10–1927–On Int. 32.38.
"Pd. 12/30/27 Int. to date 12/30/27

"Pd. Int. to June 30, 1928.  48.66

"On Principal June 30, 1928.  163.65."

Each of the foregoing notes, excepting the original note, Exhibit A, has written across the face thereof, in ink, the word "Collateral." All of these notes were retained by the bank.

At the time this transaction originated one Botten was the president and in active charge of the Milnor National Bank, and one Thorne was its cashier. The notes in question were drawn either by Botten or Thorne. The word "Collateral" on two of the notes was in the handwriting of Thorne. This indorsement on the other notes was not identified. Holt was the president and a director of the mercantile company. Rothhouse was its secretary and during a portion of the time its managing officer as well as a director. The other defendants were directors. The several defendants lived in Milnor or in the immediate vicinity thereof. The mercantile company's place of business was directly across the street from the bank. The bank's officers were frequently consulted with respect to the business affairs of the company. The company did not prosper and in 1927 it was forced to effect a compromise with some of its creditors. With the exception of Rothhouse, none of the directors knew of the execution and delivery of the notes dated subsequent to Exhibit A. The mercantile company's directors met several times each year but apparently the business was very carelessly attended to and the condition of the account with the Milnor National Bank was given very little consideration. The bank made collections on account of the stock subscription notes held by it. As these collections were made they were applied upon the mercantile company's indebtedness. No formal accounting, however, was ever made to the mercantile company. No payments were made by any of the guarantors. When the Milnor National Bank took notes and placed them among its assets, such notes were given numbers and entered in the register of bills receivable. Exhibit A was thus numbered and entered and so were the notes subsequently taken by the bank, to wit: Exhibits 5, 4, 3 and 2. The stock subscription notes taken as collateral were not so entered and numbered. The bank kept no collateral register. Rothhouse, called as a witness by the defendant, testified that the notes, Exhibits 5, 4, 3, and 2, were executed and delivered by him as secretary of the company at the request of Botten; ·

that Botten wanted these notes renewed; he said they couldn't carry anything in the bank that was past due. That at one time the witness inquired when the credits were going to be fixed up so they could get their notes back, and that Botten said they would get their credit all right and would get their notes back. He further testified that at the time the notes, Exhibits 5, 4, 3, and 2 were executed, the word "Collateral" was not indorsed upon their faces.

In July, 1928, the bank went into voluntary liquidation. Thereafter, one Lewis became its liquidating agent and cashier. In December of that year the plaintiff, the Milnor Holding Company, was incorporated to take over and realize on the assets of the bank. These assets were turned over to the holding company in April, 1929. Among the bank's assets were the notes above described. The note last given, Exhibit 2, dated January 15, 1927, was indorsed: "Without recourse pay to the order of Milnor Holding Company. Milnor National Bank, E. E. Lewis, Cashier." Attached to the note with a wire clip were the other notes, none of which were indorsed. Botten died about the time the holding company was organized. Prior to that time he had been in charge of the affairs of the bank in liquidation. Lewis succeeded him and was also made the manager of the holding company. He set about to realize on the paper which had come into the possession of the company. In June, 1930, he made a written demand upon the defendants as guarantors to pay the note, Exhibit A. This was the first demand made upon the defendants and the first notice to them that they would be required to pay the note. They refused the demand, claiming that the note had been paid. Then this action was begun.

The trial court in his sixth finding of fact found:

". . . that the note dated October 31, 1925, payable to the Milnor National Bank in the sum of $1,259 ($1,254) payable June (January) 15, 1926, and bearing interest at the rate of 9% per annum was received and accepted by said Milnor National Bank in full and complete settlement, satisfaction and discharge of the note dated August 11, 1925, in the sum of $1,279, and which said note did bear the endorsement and guarantee of the defendants, and that said note was so accepted and received by the Milnor National Bank without the knowledge or consent of the defendants William Busching and E. J. Hatle and without such defendants consenting thereto, and that each of

said several renewal notes thereafter taken as hereinbefore stated, were so taken without the knowledge or consent of said defendants Busching and Hatle."

The plaintiff challenges this finding. If it is sustainable as against such challenge, the appeal must fail and the judgment must be affirmed. Accordingly we will first examine the question thus presented.

This case, though tried to the court, was properly triable to a jury. While on this appeal the court's findings are not as conclusive on it as would be the verdict of a jury, nevertheless they come here clothed with the presumption that they are correct and will not be disturbed unless shown to be clearly and unquestionably opposed to the preponderance of the evidence. State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; Fuller v. Reed, 60 N. D. 680, 236 N. W. 267. All of the notes involved in this action, executed subsequent to the note Exhibit A, on which suit was brought, were extension or renewal notes. When each later note was executed and delivered the preceding notes were retained by the payee. Presumptively then it was the intention of the parties that they should not be considered as paid and discharged. See Wirtz v. Wolter, 32 N. D. 364, 155 N. W. 1092; C. A. Finch Lumber Co. v. Weishaar, 55 N. D. 695, 215 N. W. 155; Weiser v. Ridgeway, 56 N. D. 21, 215 N. W. 870; 8 C. J. 569, et seq. However, this presumption is not conclusive and may be overcome as well by circumstantial evidence as by the positive testimony of witnesses. 48 C. J. 701 et seq. In the instant case, the note, Exhibit A, was given in August, 1925. It was due October 1, 1925. Only a small payment was made on the principal. On October 31st a new note was taken for the amount remaining unpaid. This was again done on March 10, 1926, and again on July 12, 1926, and again on January 15, 1927. No demand was ever made upon the guarantors to pay according to the terms of their guaranty. Also the bank had the stock subscription notes totaling the amount of the debt. It was collecting these notes and applying the moneys thus collected and realized on the principal note, Exhibit A, or the renewals. None of the defendants, with the exception of Rothhouse, were aware of the renewals. They assumed that the principal note had been paid and discharged. Possibly they were negligent in not making inquiries. Be that as it may, no demand was made upon them and nothing was said to them respecting the matter,

though they lived in the same community where the payee did business and were easily to be seen. Rothhouse testified that the reason assigned by Botten for taking renewal notes was that Botten wanted to keep the bank's paper fresh. When Rothhouse inquired about getting back the preceding notes, Botten evaded him; said that there was no hurry and that they would be returned in due time. Thus evidently Rothhouse expected the old notes to be turned back, and Botten expected to turn them back. The several renewal notes bear the indorsement "Collateral" across their faces, but Rothhouse, who executed the notes as secretary for the company, testified that this indorsement was not on them at the time they were executed. Botten is dead. Thorne, the only other witness who had personal knowledge about the transaction, when examined concerning these renewal notes, said that some of these indorsements were in his handwriting and that he could not say as to whose hand had written the others. He was familiar with Botten's handwriting so Botten could not have made the indorsement, and no one seems to know when they were made. Although examined with respect to the matter, Thorne did not testify either that the original note was held as collateral or that the new notes were taken as collateral to it. He was uncertain and indefinite with respect to all of these transactions, saying that years had elapsed and he could not remember the circumstances. At the time these renewals were taken the bank still had eight of the stock subscription notes, each for $200 and interest. These notes were executed on a printed form of the bank. The makers testify that when executed they were made payable to the bank. It now appears, however, that the printed name of the payee, the Milnor National Bank, has been crossed out and the name of the Milnor Co-operative Company written in place thereof. Thorne testifies that three of the notes were originally drawn by Botten and the other five by Thorne. He was able to say this because of the handwriting used in filling in the blanks. All of the changes in the name of the payee were made by Botten. The ink used in making the change is of a different color than that used in filling in the blanks in the notes and that used by the makers in signing them. Only two of these notes appear to have been indorsed by the mercantile company. These two, together with four of the others, appear to have been indorsed by the Milnor National Bank to the Northern National Bank. Roth-

house testified that when the makers of one of these stock subscription notes became a bankrupt, Botten said to him "That is our loss and not yours." Taking all of these circumstances together, we are of the opinion that there was evidence to support the trial court's sixth finding to the effect that the note, Exhibit 5, dated October 31, 1925, was received and accepted by the bank in full and complete settlement, satisfaction and discharge of the note dated August 11, 1925, Exhibit A, and that we cannot say that this finding is clearly contrary to the preponderance of the evidence.

In view of our conclusions reached above, it becomes unnecessary for us to pass upon the other propositions urged by the appellant.

The judgment is affirmed.

BURKE, BIRDZELL, CHRISTIANSON, and BURR, JJ., concur.